29 C.C.P.A.(Patents)

## JUNGERSEN v. COHEN et al.

### Patent Appeal No. 4625.

Court of Customs and Patent Appeals.
June 29, 1942.

Karl W. Flocks, of Washington, D. C., for appellant.

Benedict Joffe, of New York City, for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter defined in the counts in issue, Nos. 1 to 5, inclusive, to appellees Cohen and Evans.

The invention relates to the casting of articles of jewelry, and particularly to a process of producing molds in sections—plural part molds—within which a pattern of an article of jewelry may be cast, as more fully set forth in the counts in issue of which count 1 is sufficiently illustrative. It reads:

"1. A process of the character described consisting in *placing a model of the ultimate article to be cast between mold casing sections having registering depressions forming a space surrounding said model,* blocking out all of said space with a plastic material, except that portion of the space which is adjacent a portion of the model for which a mold section is to be made, *and then pouring a casting material into said portion of said space to form a mold section for said portion of the model,* then while leaving the model and mold section already cast in place, removing an adjacent portion of the blocking out material to expose a different portion of the model and pouring the casting material into the space formed by removing the blocking out material to form a separate mold section for said last portion of the model contiguous to the first mold section." (Italics ours.)

The interference is between appellant's application No. 284,985, filed July 17, 1939, and appellees' patent No. 2,078,562, issued April 27, 1937, on an application, No. 115,-964, filed December 15, 1936. Appellant's involved application is a division of an earlier application, No. 139,629, filed April 28, 1937, which matured into patent No. 2,-201,131, May 14, 1940.

The counts originated in appellees' patent.

■ Appellant is the junior party and, as his application No. 139,629, of which his involved application is a division, was filed subsequent (one day) to the issuance of appellees' patent, the burden was upon appellant to establish priority of invention beyond a reasonable doubt, not by a preponderance of the evidence as held by the board.

■ Appellees submitted no evidence, and are, therefore, restricted to their filing date—December 15, 1936—for conception and constructive reduction to practice.

Appellant submitted evidence for the purpose of overcoming appellees' filing date.

The primary issue, as presented here, relates to the italicized portions of the quoted count, which cover the first and third steps of the process defined therein.

The board held that appellant had failed to establish conception of the invention prior to appellees' filing date, and, accordingly, awarded priority of invention to appellees. In so holding, the board discussed appellant's physical exhibits Nos. 2, 8, 10, 21, 37, 38, and 39, his documentary exhibit No. 35, and the evidence relating to such exhibits, it apparently having been contended by counsel for appellant that each of such physical exhibits had been successfully operated prior to appellees' filing date and that by such operation appellant had successfully reduced the involved invention to practice.

Appellant's exhibit No. 2 comprises a flat metal plate and two flat metal mold sections, each of the mold sections having an oblong opening or cut-out portion extending completely therethrough.

Relative to that exhibit, the board held that the testimony of appellant's witnesses John Horvath (production manager and foreman of the casting department of one Sigmund Cohn, apparently a manufacturer of jewelry in New York City) and David J. Kaplan ("production man in the factory" of Morris Kaplan & Sons of New York City, manufacturers of jewelry), and the stipulated testimony of Sidney Cohn (apparently associated with Sigmund Cohn) established that exhibit No. 2 had been successfully operated in this country by appellant at least as early as February, 1936, and stated that in the process of operating that device, rubber mold sections were produced and used to "cast wax patterns which were then embedded in investment material to form investment molds for casting the final product." The board described the process as detailed in the testimony of the witness Kaplan as follows:

" * * * It appears that one of the apertured metal frames of apparatus like exhibit 2 was placed on the flat metal plate and plaster of paris was poured into the hole in the frame and leveled off. A model of the article ultimately to be produced was partially embedded in the plaster of paris and a sprue former was also partially embedded adjacent thereto to form a channel leading to one edge of the frame. After the plaster of paris had set and hardened the second frame was fastened on top of the first and a sheet of rubber was laid within the second frame and over the entire area of the plaster of paris. Heat and pressure were applied to melt the rubber and cause it to flow into all the irregularities of the model and generally conform to the exposed surfaces of the model, the sprue former, and the plaster of paris. The rubber was cooled and thoroughly solidified by immersing the assembly in water. The assembly was then inverted, and the flat plate and the first frame were removed. After removing all of the plaster of paris, the first frame was replaced and a second sheet of rubber was placed over the half exposed model and sprue former within the hole in the first frame. Heat and pressure were applied as before to form a second separable rubber mold section. The two rubber mold sections were then taken from the frames, separated to remove the model and the sprue former, and used to cast a wax duplicate of the original model. The wax casting was then used to form an investment mold for casting the finished article."

The board then called attention to the fact that the first step in the process defined by each of the involved counts consists in "placing a model of the ultimate article to be cast *between* mold casing sections having *registering depressions* forming a space surrounding said model" (italics quoted from the board's decision), and held that as the mold casings or frames in appellant's exhibit No. 2 had registering openings or cut-out portions extending completely therethrough, it could not be said that the casing sections of that exhibit had *registering depressions between* which a model of the ultimate article to be cast could be placed, and that, therefore, the operation of exhibit No. 2, in the manner set forth in the quoted excerpt from the board's decision, did not conform to the first step in the process set forth in each of the involved counts.

In so holding, the board stated that the mold casing sections disclosed in appellees' patent were materially different from the mold casing sections or frames of appellant's exhibit No. 2, and that appellees' casings, as disclosed in their patent, were very similar to appellant's exhibit No. 8, in which two metal mold casings are provided with "hollowed out portions" and in which "the model is practically completely enveloped by the two casing sections, the depressions [hollowed out portions] of which respectively form bounding walls of solid metal."

It would seem to be clear that the first step in the involved process requires the

placing of a model between mold casing sections which have registering depressions, which registering depressions form a space surrounding the model. Obviously, the registering openings or cut-out portions extending completely through the mold sections in appellant's exhibit No. 2 cannot be said to be hollowed out portions or "registering depressions," within the plain meaning of the language contained in the involved counts.

Counsel for appellant here contends that the board was in error in holding that appellant's exhibit No. 2 is materially different from the mold casing sections disclosed in appellees' patent, and argues that the mold casing sections of exhibit No. 2 are, in fact, similar to the mold casing sections disclosed in appellees' patent.

We have given careful consideration to the drawings of appellees' patent, but are unable to concur in the views of counsel for appellant.

Appellees clearly state in their patent that the mold casing sections have "cavities or depressions or cut-out portions in each of the faces." Furthermore, if counsel for appellant is correct in his argument, appellees could not make the claims constituting the counts in issue. We are of opinion, therefore, that the process carried out by means of appellant's exhibit No. 2, as explained by appellant's witness Kaplan, does not conform to the first step in the process defined in the involved counts. We are also of opinion that the first step in the process defined by the counts in issue could not be carried out by the operation of appellant's exhibit No. 2.

Although a portion of the device is missing, appellant's exhibit No. 21 is apparently similar to his exhibit No. 2. Accordingly, as pointed out by the board in its decision, there is nothing of record to indicate that the first step in the process defined in the involved counts was, or could have been, carried out by that device—exhibit No. 21.

■ The board held, and its holding is clearly in accordance with the evidence of record, that, although appellant's exhibits Nos. 8, 37, 38, and 39 were substantially similar to the mold casing sections disclosed in appellees' patent, there was no evidence of record that those exhibits were operated, or that the method of their operation was explained by appellant to any one,

prior to appellees' filing date, and no claim is made here by counsel for appellant that the board erred in that respect.

In its decision, the board referred to appellant's exhibit No. 10, which, for reasons hereinafter stated, need not be described here, and stated that it appeared from the testimony of the witness Horvath that appellant brought the device (exhibit No. 10) to the United States sometime during the year 1936 and demonstrated it to the witness, but that as the witness did not state of what the demonstration consisted, it could not be held that the involved process had been carried out by the operation of that device prior to appellees' filing date. Although the board discussed exhibit No. 10 in considerable detail, we find it unnecessary to do so, as it is clear from the record that appellant has not established either a conception or reduction to practice of the involved invention by the operation of that device.

Appellant's exhibit No. 35 consists of a copy of a patent application, prepared for appellant in the early part of 1936, and executed by him on March 23 of that year. However, that application was not filed in the Patent Office, and there is no evidence corroborating the testimony of appellant regarding its preparation. The board held, therefore, that appellant's exhibit No. 35 did not establish conception of the invention, and we are in agreement with that holding.

The board also held that appellant had failed to establish either conception or reduction to practice of the third step in the involved process, which is present in each of the involved counts, prior to appellees' filing date. In view of the fact that we are of opinion that appellant has failed to establish either conception or reduction to practice of the first step of the process defined in each of the involved counts prior to appellees' filing date, it is unnecessary that we consider whether appellant has established conception or reduction to practice of the third step in the involved process, nor is it necessary that we discuss other issues decided by the board and referred to in the brief of counsel for appellant.

For the reasons stated, the decision of the Board of Interference Examiners, awarding priority of invention to appellees, is affirmed.

Affirmed.